IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ALEX HUAQIANG LEO, )<br>)<br>              **Plaintiff,** )<br>)<br>v. )<br>)<br>GARMIN INTERNATIONAL, )<br>)<br>              **Defendant.** )<br>_____) | CIVIL ACTION<br>No. 09-CV-2139-KHV |

**MEMORANDUM AND ORDER**

Alex H. Leo brings suit pro se against Garmin International, alleging employment discrimination on account of age in violation of the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #139) filed January 8, 2010. For reasons stated below, the Court sustains defendant's motion.

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. The

moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving parties meet their burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on his pleadings but must set forth specific facts. Id. If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. Liberty Lobby, 477 U.S. at 250-51.

## **Factual Background**[1]

The material facts, with disputes resolved in plaintiff's favor, are as follows:

Garmin designs, manufactures and sells GPS-enabled navigation and communication devices. Garmin software engineers develop, design, test, maintain and provide quality assurance for its complex GPS products. Garmin therefore requires that software engineers have experience or

---

[1] In responding to defendant's motion for summary judgment, plaintiff did not comply with D. Kan. Rule 56.1, the local rule which governs summary judgment. The rule requires a party opposing a motion for summary judgment to begin the opposition with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists, separately numbering by paragraph each fact in dispute, referring with particularity to the portions of the record upon which the opposing party relies, and (if applicable) stating the number of movant's fact that is disputed. D. Kan. Rule 56.1(b). All material facts set forth in the movant's statement shall be deemed admitted unless specifically controverted by the opposing party. D. Kan. Rule 56.1(a).

Plaintiff has not complied with this rule. Plaintiff has not included a concise statement of material facts; rather, he has included lengthy paragraphs of unsupported facts, many of which bear little relation to plaintiff's claim. Plaintiff's response also includes mathematical charts and diagrams which incorporate statistics for which plaintiff has provided little factual support. Despite this, because plaintiff proceeds pro se, the Court has diligently searched plaintiff's brief and attachments to determine whether genuine issues of material fact preclude summary judgment. See Jackson v. Yellow Logistics, Inc., 24 F.Supp.2d 1206, 1209 (D. Kan. 1998).

training related to developing and designing software for consumer aviation or marine-related GPS products and/or embedded mobile applications. Garmin's job description states that software engineers must possess "strong verbal and written communication skills;" relevant experience and/or training in a high level language such as C, C++, C# or Java; relevant experience and/or training in data structures or object oriented design methodology and "relevant education and/or experience in software design, development and maintenance, as required for the successful performance of the essential functions of the position," as well as other requirements.

On June 18, 2007, plaintiff applied on line for a software engineer position. On June 20, 2007, Larisa Conklin, a Garmin recruiter, rejected plaintiff's application because his experience was primarily in the academic field and he lacked recent relevant industry-related experience and therefore was not qualified.[2]

On January 7, 2008, Brad Mason, another recruiter for Garmin, sent a mass email to a large number of registered monster.com users discussing software engineering opportunities at Garmin and inviting recipients to consider employment opportunities at Garmin. Mason speaks to hundreds of individuals a year about employment opportunities at Garmin. Many of these individuals provide their resumes and/or tell Mason that they are very interested in particular positions. Garmin does not consider any of them to be job applicants unless they submit an on-line application, which Garmin has required since November of 2006.[3] Before he sent the recruitment email on January 7, 2008, he did not review any resumes already posted on monster.com to determine whether any recipient

---

[2] Plaintiff has never filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Garmin's rejection of this application was discriminatory.

[3] Submitting an on-line application is the first step in Garmin's formal application process.

would be qualified for a position with Garmin.

In mid-January of 2008, plaintiff was 44 years old. He responded to Mason's email and expressed interest in a software engineer position. Plaintiff stated that he had attended Baker University with a current Garmin employee. Several days later, plaintiff emailed Mason a resume and a paper that he had written for a class. See Doc. #159-9 at 24-26. Plaintiff's resume indicated that he had a bachelor's degree in engineering, a master's degree in engineering and a Ph.D. in electrical engineering. The resume also listed the following professional experience:

2006 to 2008, consultant, e-government system, Zi'an, China

2001-2004, adjunct instructor, computer systems, Johnson County Community College

1994-2001, Associate Professor of Computer Science, Northwestern Polytechnical University, Zi'an, China.

The resume listed plaintiff's project experiences, including embedded digital engine control system team leader, healthcare care system team leader, coordination of computerized automatic control and data collection. The resume listed plaintiff's areas of specialization as modeling and algorithm exploring of biology and biochemistry; application of nonlinear dynamics theory; digital signal/image processing and pattern recognition; theory and applications of automatic control and industrial applications of embedded systems.

Mason reviewed plaintiff's resume and determined that plaintiff did not have the relevant experience and training for a software engineer position. Specifically, his resume did not disclose relevant recent industry-related training or experience.

Over the following weeks, plaintiff made several attempts to contact Mason. On February 6, 2008, he sent Mason an email which again stated that he knew a current Garmin employee who could be a potential reference for him. Referrals are important recruitment tools for Garmin. Mason

therefore emailed plaintiff and agreed to talk with him to determine whether he had relevant experience that was not reflected on his resume.

On February 21 or 22, 2008, Mason and plaintiff spoke by telephone. During their conference, Mason had difficulty understanding plaintiff and asked him to repeat himself several times.[4] Further, the information which plaintiff provided reaffirmed Mason's initial impression that plaintiff did not have the skills and qualifications required for a software engineer position at Garmin.

When individuals submit a resume to Garmin, Garmin normally sends them an email or postcard which acknowledges their interest and informs them that to be considered for employment, they must submit an on-line application. Plaintiff did not receive such an email or postcard and Mason did not inform plaintiff of the on-line application requirement. Plaintiff did not submit an on-line application in 2008, and Garmin did not notify plaintiff of any action which it took regarding plaintiff's contacts with Mason.

On June 2, 2008, plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a charge of age discrimination against Garmin. Before he saw plaintiff's EEOC charge, Mason did not know plaintiff's age or date of birth, or that plaintiff had submitted an on-line application in June of 2007. Further, before plaintiff's EEOC charge, Mason had never spoken to anyone at Garmin regarding plaintiff's qualifications for a software engineer position.

Between February 1 and April 30, 2008, Garmin hired 17 individuals as software engineers

---

[4] In the pretrial proceedings in this case, plaintiff stated that he had a difficult time communicating verbally in English. Judge O'Hara specifically noted that at times he found plaintiff's speech difficult to understand during the initial scheduling teleconference. See Doc. #20 at 4. Further, plaintiff demanded that Garmin provide a Chinese translator during his deposition because he could not understand Garmin's questions and/or needed the translator to communicate.

or senior software engineers.[5] Six of those engineers were 40 or older when Garmin hired them. Two of them were older than plaintiff (64 and 49) and three others were the same age or a few years younger than plaintiff (44, 44, and 42). Moreover, Mason is the only Garmin employee who reviewed plaintiff's resume in January and February of 2008 and who spoke to plaintiff regarding his interest in working at Garmin. Mason is only two years younger than plaintiff. Mason was involved in recruiting three of the 17 engineers: (1) Charles Herscovici (then age 43); (2) Grant Griffin (then age 44); and (3) Anthony Pelosi (then age 28). See Defendant's Exh. B: Mason Decl., ¶ 25. Except for one employee who had previously interned at Garmin, each of the 17 individuals had recently submitted an on-line application.

Plaintiff testified that he is qualified to perform "any" technical job at Garmin, and that Garmin should base hiring decisions solely on educational qualifications.

## **Analysis**

Plaintiff claims that Garmin did not hire him because of his age in violation of the ADEA. Garmin seeks summary judgment, asserting that plaintiff cannot establish a prima facie case of age discrimination and that in the alternative, plaintiff has not presented sufficient evidence for a reasonable jury to find that its legitimate, nondiscriminatory reasons for not hiring him are a pretext for age discrimination.

The ADEA makes it unlawful for an employer to take adverse action against an individual "because of such individual's age." See Pippin v. Burlington Res. Oil & Gas, 440 F.3d 1186, 1192 (10th Cir. 2006) (ADEA prohibits treating plaintiff less favorably because of age). In Gross v. FBL

---

[5] At Garmin, software engineers and senior software engineers perform the same duties. The senior software engineer designation requires ten years of industry-related experience.

Fin. Servs., Inc., the Supreme Court reaffirmed that in order for plaintiff to establish an ADEA disparate treatment claim he "must prove that age was the 'but-for' cause of the employer's adverse decision." 129 S.Ct. 2343, 2350-51 (2009). The Supreme Court held that the ADEA does not authorize mixed-motive age discrimination claims, but stated that it had not "definitively decided" whether the evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to ADEA cases. After Gross, courts in this Circuit have continued to apply the McDonnell Douglas framework to ADEA cases. See, e.g., Woods v. The Boeing Co., No. 07-3358, 2009 WL 4609678, at *5 (10th Cir. Dec. 8, 2009) (Anderson, J, concurring) (McDonnell still applies in ADEA cases in Tenth Circuit).

I.  Prima Facie Case

To establish a prima facie case of disparate treatment in the context of failure to hire, plaintiff must show that (1) he belonged to a protected class; (2) he applied and was qualified for a job for which Garmin was seeking applicants; (3) Garmin did not hire him and (4) after plaintiff's rejection, the position remained open and Garmin continued to seek applicants. See Garrison v. Gambro, Inc., 428 F.3d 933, 937 (10th Cir. 2005). Garmin asserts that plaintiff has not set forth facts to prove the second or third elements of a prima facie case.

As to the second element, Garmin first asserts that plaintiff has not set forth evidence that he applied for a job at Garmin. In 2006, Garmin instituted a policy which required that all individuals interested in a job with Garmin submit an application on line.[6] Plaintiff acknowledges that he did not submit an on-line application in 2008. Plaintiff points out, however, that ordinarily, after

---

[6] Submitting an on-line application is the required first step in Garmin's formal hiring process.

individuals submit resumes, Garmin sends them an email or postcard to inform them they must submit an on-line application if they want Garmin to consider them for a position. Plaintiff did not receive such an email or postcard. Further, although Mason knew that plaintiff was interested in a position in January of 2008, he did not tell plaintiff about the on-line application requirement.[7] Garmin argues that where an employer has set up a formal application process, a mere expression of interest does not constitute an application, citing Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251-52 (10th Cir. 1992). Under Whalen, a plaintiff must show that the employer was on "specific notice" that he sought a particular position. See id. In this regard, Garmin points out that its recruiters speak to hundreds of individuals a year regarding employment opportunities at Garmin, and that individuals often give recruiters a resume or tell a recruiter they are interested in a position but then do not apply on line. Garmin argues that at best, plaintiff has shown only that Garmin understood that plaintiff was interested in a position. Viewed in a light most favorable to plaintiff, however, the record supports a finding that Garmin was on specific notice that plaintiff sought a software engineer position at Garmin.

Garmin also asserts that plaintiff cannot establish the second element of a prima facie case because he cannot show that he was qualified for the software engineer position. In determining whether a plaintiff is qualified, a court must look to the employer's actual expectations and qualifications for the position – not what a plaintiff subjectively believed them to be. Garrison, 428 F.3d at 937-38 (being unqualified for job is one of two "most common nondiscriminatory reasons" for rejection) (quoting Burdine, 450 U.S. at 253-54). Further, an employer's determination of the

---

[7] Garmin asserts that plaintiff was aware of Garmin's on-line application process because he submitted an on-line application in June of 2007.

necessary qualifications for a position are entitled to significant deference. Garrison, 428 F.3d at 938 (employers, not employees or courts, entitled to define core qualifications for position as long as criteria are nondiscriminatory); Gorence v. Eagle Food Ctrs, Inc., 242 F.3d 759, 765 (7th Cir. 2001) (determining qualifications for position is business decision).

Here, the basic qualifications for Garmin's software engineer position include (1) strong verbal and written communication skills; (2) relevant experience or training in a high level language such as C, C++, C# or Java; (3) relevant experience and/or training in data structures or object oriented design methodology; and (4) "relevant education and/or experience in software design, development and maintenance, as required for the successful performance of the essential functions of the position."

Garmin has presented uncontroverted evidence that plaintiff was not qualified because he did not possess the required communication skills for the position. Mason had difficulty understanding plaintiff during a telephone conversation in February of 2008. Plaintiff has not presented any evidence that he possesses strong verbal communication skills.

Garmin also has presented evidence that plaintiff did not have the required skills, experience and/or training related to, or relevant to, developing and designing software for consumer products, aviation, marine-related products, and/or embedded mobile applications. Garmin points out that it rejected plaintiff's application in 2007 because he lacked relevant experience and was therefore unqualified.

Plaintiff has not provided evidence that in February of 2008 he possessed the required training, experience and communication skills for the software engineer position at Garmin. Therefore he cannot establish the second element of his prima facie case and Garmin is entitled to

summary judgment on his claim.[8]

II.     Pretext

As noted, defendant contends that it did not hire plaintiff because he did not apply for a software engineer position and, in any event, he was not qualified. In the alternative, Garmin asserts that even if plaintiff could set forth a prima facie case, he cannot establish that its explanation for failure to hire him is a pretext for discrimination or that that his age was the "but for" reason for its failure to hire him.

Because Garmin has articulated a legitimate nondiscriminatory reason for not hiring defendant, the burden shifts to plaintiff to present evidence from which a reasonable jury might conclude that Garmin's proffered reason is pretextual, that is "unworthy of belief." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). While this burden is not onerous, it is also not empty or perfunctory. Id. at 1323-24. A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendant acted

---

[8]     Garmin also asserts that plaintiff cannot show the third element of his prima facie case – that it actually rejected him for employment. Garmin contends that Mason took no action at all, other than agreeing to speak with plaintiff on the telephone. Garmin argues that under its policies, an individual cannot be rejected (or, conversely, hired) unless he submits an on-line application – which plaintiff never did. Because the Court has found that plaintiff was not qualified for the job, it need not determine whether by not hiring plaintiff, Garmin implicitly rejected him.

contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff. See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). More specifically, evidence of pretext may include the employers's policy and practice regarding employment of members of the protected class (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating criteria); and use of subjective criteria. Simms v. Okla. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999).

Plaintiff has not pointed to evidence that Garmin's proffered reason for not hiring him – i.e. that he did not possess the skills and qualifications that Garmin seeks for the position – was a pretext for discrimination. Plaintiff points to his own testimony that he was qualified, but this is not enough. See Garrison, 428 F.3d at 938 (employers, not employees or courts, entitled to define core qualifications for position as long as criteria are nondiscriminatory). Further, plaintiff has failed to present evidence that age had anything to do with Garmin's failure to hire him. Garmin points out that in February, March, and April of 2008, it hired 17 software engineers or senior software engineers – two of whom were older than plaintiff and three of whom were the same age or a few years younger than plaintiff. Mason is the only Garmin employee who reviewed plaintiff's resume in January and February of 2008, or who spoke to plaintiff regarding his interest in working at Garmin. Mason is only two years younger than plaintiff and is in the protected class. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 561 (2d Cir. 1997) (where decision-maker is in protected class, inference of age discrimination less plausible). Plaintiff has not produced evidence that Garmin's proffered reasons for not hiring him are a pretext for discrimination.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc #139) filed January 8, 2010 be and hereby is **SUSTAINED**.

Dated this 21st day of May, 2010 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> Kathryn H. Vratil
> United States District Judge